# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

SAMUEL LEBRON,

               Defendant.

Case No. 3:23-cr-00056-SLG-MMS

## ORDER RE MOTION TO SUPPRESS

Before the Court at Docket 35 is Defendant Samuel Lebron's Motion to Suppress. Defendant also moved for an evidentiary hearing at Docket 37. The Government responded in opposition at Docket 36. The motion was referred to Chief Magistrate Judge Matthew Scoble, who issued a Report and Recommendation, which denied Mr. Lebron's motion for an evidentiary hearing and recommended denying Mr. Lebron's motion to suppress as to evidence seized after a search of his residence.[1] Mr. Lebron objected to the Report and Recommendation at Docket 43; the Government replied to Mr. Lebron's objections

---

[1] *See generally* Docket 38. Mr. Lebron's motion also sought exclusion of statements he made before he was given warnings in accord with *Miranda v. Arizona*. *See* Docket 35 at 15-16". In its response, the Government stated that "[t]here are no statements by the defendant made under police interrogation that would be offered at trial." Docket 36 at 7. The Report and Recommendation "accept[ed] the government's representation as to Lebron's lack of statements, but [recommended that] insofar as it wishes to offer certain statements prior to Lebron being read his Miranda rights, it should be barred from doing so." Docket 38 at 18. Mr. Lebron did not object to that recommendation.

at Docket 45. The Court held oral argument on the motion to suppress on May 15, 2024, after which the parties submitted supplemental briefing.[2]  After a status conference on August 8, 2024, the parties submitted additional supplemental briefing.[3]

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1).  That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[4]  A court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[5]  But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."[6]  However, even if no party objects to a final report and recommendation, "a district court's authority to review a magistrate judge's [findings and recommendations] is not conditioned on a party's making an objection" and "nothing in [28 U.S.C. § 636]

---

[2] Docket 53; Docket 56; Docket 57.

[3] Docket 63; Docket 64; Docket 68.

[4] 28 U.S.C. § 636(b)(1).

[5] *Id.*

[6] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 2 of 21

precludes the district court from reviewing other finding or recommendations de novo if it chooses to do so."[7]  The Court accepts in part and rejects in part the Report and Recommendation as explained below.

## BACKGROUND

In February 2023, Mr. Lebron was on probation for a state conviction for misconduct involving a controlled substance.[8]  One of his probationary conditions was that he "shall submit to a search of their person, personal property, residence, vehicle or any vehicle over with [sic] they have control, for the presence of illicit drugs or drug paraphernalia."[9]  Mr. Lebron was also on pretrial release for a pending charge of domestic violence.[10]

On February 23, 2023, Probation Officers ("PO") Hutchings and Farrar attempted a probation compliance check on Mr. Lebron at his residence after receiving a call about potential weapons and drugs on the premises.[11]  The next day, PO Hutchings and PO Farrar went to Mr. Lebron's residence for a compliance check home visit where they met Pretrial Enforcement Division ("PED") Officers

---

[7] *Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017).

[8] Docket 35-4 at 1-5.  As Mr. Lebron points out, the Report and Recommendation incorrectly found that Mr. Lebron was on probation for a crime of domestic violence; he was on probation for distribution of a controlled substance and on pretrial release for a pending domestic violence charge.  Docket 38 at 4; Docket 43 at 2.

[9] Docket 35-4 at 4.

[10] Docket 35 at 2 n.1.

[11] Docket 35-2 at 1-2.  *See* Docket 64-1 at 4 (describing three anonymous tips which mentioned Mr. Lebron and the alleged victim of his pending state domestic violence charge, that Mr. Lebron had drugs and a gun at his residence, and that he had pulled the gun on the victim).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 3 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 3 of 21

White and Brandt.[12]  The PED Officers were trying to verify the location of Mr. Lebron's third-party custodian because they had received information that the third-party custodian was not properly supervising Mr. Lebron.[13]

The officers shortly realized that Mr. Lebron was not on the premises because he was reporting to the PED office across town.[14]  PO Hutchings asked the PED officers to "act under [his] authority to conduct a probation take home check from [Mr. Lebron's] current location [at the PED office] back to his listed residence."[15]  PED Officers White and Brandt went to the PED office and detained, handcuffed, and searched Mr. Lebron.[16]  They found "some large pill capsules with a whiteish powder inside," which Mr. Lebron represented were medication for blood pressure and Tylenol.[17]  The PED officers transported Mr. Lebron back to his residence, where PO Farrar informed Mr. Lebron that probation was conducting a check of his residence for drugs pursuant to Mr. Lebron's purported "warrantless

---

[12] Docket 35-2 at 1-2.

[13] Docket 35-2 at 1-2.

[14] Docket 35-2 at 1-2.

[15] Docket 35-2 at 2.

[16] Docket 35-2 at 1.  The Report and Recommendation suggested that both PED and probation officers went to the PED office and searched and arrested Mr. Lebron.  Docket 38 at 3.  Mr. Lebron objected to that factual finding, Docket 43 at 1, and the Court agrees that only PED officers searched and arrested Mr. Lebon, *see* Docket 35-2 at 1 ("PED POs Brandt and White responded back to the PED Office.  APO POs stayed behind at the trailer, waiting outside.").

[17] Docket 35-2 at 1.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 4 of 21

search condition[]."[18]  Mr. Lebron provided the officers with a code to open the front door, which did not work.[19]  He then provided the officers with a key.[20]

Upon searching a bedroom in the residence, PO Hutchings and PED Officer White found "a white crystalline substance . . . folded into a piece of currency," which PO Hutchings believed to be methamphetamine.[21]  PO Hutchings decided to continue the search "because that amount would not constitute a new charge."[22] PED Officer White searched a suitcase in a closet; in the suitcase, PED Officer White found a gun and Crown Royal bag that contained small blue pills that PO Hutchings believed to be fentanyl.[23]  PO Farrar stopped the search, contacted local law enforcement, and told Mr. Lebron that he was under arrest for a probation violation.[24]  PO Farrar also read Mr. Lebron his rights pursuant to *Miranda v. Arizona*.[25]  Mr. Lebron was transported to jail.[26]

---

[18] Docket 35-2 at 1-2.

[19] Docket 35-2 at 1.

[20] Docket 35-2 at 1.

[21] Docket 35-2 at 2.

[22] Docket 35-2 at 2.

[23] Docket 35-2 at 1-2.

[24] Docket 35-2 at 2.

[25] Docket 35-2 at 1.

[26] Docket 35-2 at 2.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 5 of 21

# LEGAL STANDARD

"The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."[27] "A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"[28] "The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement."[29]

## DISCUSSION

## I.    Search and Arrest of Mr. Lebron by Pretrial Enforcement Officers

Mr. Lebron challenges his detention and the search of his person and seizure of his property by the PED officers at the PED office as unconstitutional under *Terry v. Ohio* and its progeny.[30] In his view, the PED officers lacked reasonable suspicion to detain and search him because the anonymous tips were uncorroborated and contained "little predictive information," and there was "no reliable evidence that [Mr. Lebron] posed any kind of risk when detained at the

---

[27] *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).

[28] *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (emphasis in original) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

[29] *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017) (citation omitted).

[30] Docket 35 at 5-10 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 6 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 6 of 21

PED office."[31]  Mr. Lebron also challenges his arrest by the PED officers at the PED office.[32]  He maintains that his arrest was not supported by probable cause and, even if the probation officers had directed the PED officers to arrest Mr. Lebron, his arrest was unlawful because the probation officers themselves lacked a legal basis under state law to arrest Mr. Lebron without cause.[33]

In response, the Government maintains that *Terry* is inapplicable and that, "[i]n any event, the search of [Mr. Lebron] by PED officers is not at issue, as it did not yield any evidence that will be offered at trial . . . ."[34]  In supplemental briefing, the Government contends that "[t]he PED officers had probable cause to believe that Lebron had violated his release conditions, which incorporated his probation conditions," and "that he had been in unlawful contact with the victim, which was another volition [sic]."[35]  For support, the Government points to an attached exhibit purportedly showing that Mr. Lebron's pretrial release conditions were the same as his probationary conditions.[36]  However, the Government does not point the Court to a specific page of the ten-page exhibit and the exhibit—which is a copy of Mr. Lebron's "offender history"—does not sufficiently demonstrate Mr. Lebron's

---

[31] Docket 35 at 6-8.

[32] Docket 35 at 10-13.

[33] Docket 35 at 13-15.

[34] Docket 45 at 2.

[35] Docket 64 at 6.

[36] Docket 64 at 3; Docket 64-1.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 7 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 7 of 21

conditions of pretrial release. Therefore, the Government fails to meet its burden to show that the PED officers had the legal authority to detain, search, and arrest Mr. Lebron or to seize his property at the PED office.[37]

Because the Government fails to establish that the warrantless search and arrest of Mr. Lebron by the PED officers complied with the Fourth Amendment, any evidence obtained by the PED officers during their search of Mr. Lebron at the PED office must be suppressed.[38]

## II. Search of Mr. Lebron's Residence

Mr. Lebron maintains that because the search and arrest at the PED office were unconstitutional, any evidence discovered at his residence is derivative of the illegal arrest and therefore should be suppressed as fruit of the poisonous tree.[39] "[P]robation officers were only able to enter and search Mr. Lebron's trailer," he contends, because they had illegally arrested him and seized his house key.[40] The Government responds that the search of Mr. Lebron's residence "was authorized

---

[37] *See* Alaska Stat. § 33.07.030(g)(1) ("[I]f the [PED] officer has probable cause to believe the defendant has committed an offense under AS 11.56.730 [regarding failure to appear] or 11.56.757 [regarding violating a condition of release] or has violated the defendant's release conditions," the PED officer may "arrest, with or without a warrant, a defendant who has been released while awaiting trial.").

[38] The Court therefore rejects the Report and Recommendation insofar as it concluded that the search and arrest of Mr. Lebron at the PED office was lawful. Docket 38 at 13-15.

[39] Docket 35 at 16-17.

[40] Docket 35 at 16.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 8 of 21

by the probation terms and could have been conducted with or without his presence."[41]

"[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'"[42]  "The exclusionary rule requires a causal connection between the illegal conduct and the evidence sought to be suppressed."[43]  "There are three exceptions to the exclusionary rule that implicate the causal relationship between the illegal act and discovery of the evidence: 1) the independent source doctrine; 2) the inevitable discovery doctrine; and 3) the attenuation doctrine."[44]  "[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source."[45]  For the inevitable discovery exception to apply, the prosecution must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means."[46]

---

[41] Docket 36 at 8.

[42] *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U. S. 796, 804 (1984)).

[43] *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004).

[44] *Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1053 (9th Cir. 2018).

[45] *Strieff*, 579 U.S. at 238 (citing *Nix v. Williams*, 467 U.S. 431, 443-444 (1984)).

[46] *Nix*, 467 U.S. at 444.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 9 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 9 of 21

In Mr. Lebron's view, the inevitable discovery doctrine does not apply because the POs gained entry to Mr. Lebron's residence by using a key that was discovered during the unlawful search of Mr. Lebron at the PED office and because the probation search for drugs in the residence itself violated the Fourth Amendment.[47]  The Court addresses both of Mr. Lebron's arguments in turn.

### a. Use of Key to Gain Entry

Mr. Lebron maintains that the key to his residence was seized by PED officers during an illegal search at the PED office and was subsequently used to enter his residence.  Therefore, he maintains that the evidence found in the home is fruit of the illegal search and must be suppressed.[48]  The Government responds that the search of Mr. Lebron's residence "was authorized by the probation terms and could have been conducted with or without his presence"[49] and "they could have simply kicked in the door."[50]

First, the record does not show that PED officers illegally seized Mr. Lebron's key at the PED office.  The offender history log filed by Mr. Lebron indicates that Mr. Lebron himself provided the POs with both the code to his trailer (which did not work) and the key when Mr. Lebron was outside the residence.[51]

---

[47] Docket 35 at 16-17.

[48] Docket 35 at 16; Docket 43 at 6.

[49] Docket 36 at 8.

[50] Docket 45 at 3.

[51] Docket 35-2 at 1.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 10 of 21

The Government's response indicates that the PED officers seized currency, his wallet and identification, a cellphone, and some pills at the PED office, but not any keys.[52]

Second, the Court finds that the record establishes that it is more likely than not that the POs would have conducted a compliance check of Mr. Lebron's residence and ultimately would have discovered the evidence in his residence even without his unlawful arrest and any purported seizure of his key. The POs had attempted to conduct a compliance check of Mr. Lebron's residence the day before. They returned to his residence on the day in question to again conduct a compliance check. Had the POs not been able to find Mr. Lebron on that day, it is likely that they would have continued attempting a residence compliance check in order to investigate the allegations in the anonymous tips, which both suggested that Mr. Lebron had drugs and guns at his residence, which would have been in violation of his probationary conditions, and that he was threatening the alleged victim in his state domestic violence case. While the Government could have made a much stronger proffer, the Court finds that the evidence in the residence would have inevitably been discovered in due course.

### b. Constitutionality of Probation Search

A warrantless search of a probationer's home does not violate the Fourth Amendment if, in light of the circumstances of the particular case, the court

---

[52] Docket 36 at 2; *see also* Docket 36 at 3 (photo of evidence).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 11 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 11 of 21

determines the search was "reasonable."[53]  In determining the reasonableness of the search, a district court balances "the degree to which [the search] intrudes upon [an individual's] privacy and . . . the degree to which [the search] is needed for the promotion of legitimate governmental interests."[54]  Whether the probationer has agreed to a warrantless search condition is "a salient circumstance" in the balancing of interests.[55]  "Only after the meaning and scope of a search clause are determined, under state law, does the federal Fourth Amendment analysis begin."[56]

### i.  Meaning and Scope of Probation Search Condition

Mr. Lebron's probation condition required that he "shall submit to a search of [his] person, personal property, residence, vehicle or any vehicle over with [sic] [he has] control, for the presence of illicit drugs or drug paraphernalia."[57]  Mr. Lebron maintains that his probation search condition does not explicitly impose a suspicionless search condition but instead, it "could plausibly be construed to allow for suspicionless searches or it could be construed . . . to allow searches only when

---

[53] *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016).

[54] *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)).

[55] *King*, 736 F.3d at 808 (quoting *Knights*, 534 U.S. at 119).

[56] *Id.* at 807 n.3.

[57] Docket 35-4 at 4.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 12 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 12 of 21

there is some degree of suspicion of the presence of drugs or drug paraphernalia."[58]

In *State v. James*, the Alaska Court of Appeals interpreted a probationary search condition nearly identical to Mr. Lebron's.[59] The condition in *James* required the probationer, "upon the request of a probation officer, [to] submit to a search of his person, personal property, residence, or any vehicle in which he might be found for the presence of contraband."[60] The *James* court held that this condition authorized "warrantless searches of a probationer's person and property, even when the probationer does not consent to the search."[61] Alaska law also "requires the probation officer to communicate in some way with the probationer before conducting a search."[62] The POs informed Mr. Lebron that they were conducting a compliance check of his residence.[63] As such, under Alaska law, Mr. Lebron's search condition authorized the warrantless search of his residence for drugs and drug paraphernalia.[64]

---

[58] Docket 35 at 18-19.

[59] 963 P.2d 1080, 1081 (Alaska Ct. App. 1998).

[60] *Id.*

[61] *Id.*

[62] *Joubert v. State*, 926 P.2d 1191, 1194 (Alaska Ct. App. 1996).

[63] Docket 35-2 at 2.

[64] The Court therefore adopts the Report and Recommendation insofar as it found that probable cause was not required for a probation search of Mr. Lebron's residence. Docket 38 at 9.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 13 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 13 of 21

Mr. Lebron also contends that the search conducted by the POs exceeded the scope of the search allowable under Alaska law because the PO decided to continue the search after finding a small amount of methamphetamine because he believed the amount was insufficient to support an additional drug charge.[65]

Under Alaska law, a probation officer may search a probationer's residence without a warrant if "the search has been authorized by the conditions of probation or release, the search is conducted by or at the direction of probation authorities, and the search bears a direct relationship to the nature of the crime for which the probationer was convicted."[66] Mr. Lebron seems to challenge the second criteria, citing an unpublished case, which provides that

> A probation search is invalid when it appears that the probation officer acted as "the agent, tool, or device of the police," or if the search was "merely a cover for illegal police activity." But when our cases ask whether the search was "initiated," "instigated," or "directed" by the police rather than the probation officer, these terms signify something more than but-for causation. In other words, the mere fact that a police contact leads a probation officer to take action does not render the probation officer the agent or pawn of the police, so long as the probation officer exercises independent discretion.[67]

Here, there is no evidence that the police initiated, instigated, or directed the POs to search Mr. Lebron's residence. Rather, the POs were spurred by anonymous tips they received regarding potential drugs and guns at Mr. Lebron's

---

[65] Docket 57 at 7-8; *see* Docket 35-2 at 2.

[66] *Milton v. State*, 879 P.2d 1031, 1034 (Alaska Ct. App. 1994).

[67] *Bradford v. State*, Case No. A–11847, 2017 WL 3662449, at *3 (Alaska Ct. App. Aug. 23, 2017) (internal citation omitted).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 14 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 14 of 21

residence and were authorized to search for drugs pursuant to the probationary condition.[68]

## ii. Reasonableness of the Search

The Government maintains that the probation search was valid pursuant to *United States v. Knights*, *Samson v. California*, and *United States v. King*.[69] In *Samson*, the Supreme Court held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."[70] In *Knights*, the probationary condition at issue required Knights to "submit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer."[71] The Supreme Court held that "the balance of [Fourth Amendment] considerations requires no more than reasonable suspicion to conduct a search of this probationer's house."[72] And in *King*, the Ninth Circuit upheld a suspicionless search conducted pursuant to a suspicionless

---

[68] The Court disagrees with Mr. Lebron's characterization that "the probation officers had no indication that there would be other

[69] Docket 36 at 4-6 (first citing *Samson v. California*, 547 U.S. 843 (2006); then citing *Knights*, 534 U.S. 112; and then citing *King*, 736 F.3d 805).

[70] *Samson*, 547 U.S. at 857.

[71] *Knights*, 534 U.S. at 114.

[72] *Id.* at 121.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 15 of 21

search condition in a violent felon's probation agreement, but expressly limited that holding to those convicted of violent crimes.[73]

These cases do not decide the constitutionality of the search of Mr. Lebron's residence because the Fourth Amendment balance in each of those cases was slightly different. *Samson* involved the search of a parolee, not a probationer, and "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment."[74] In *Knights*, "[t]he probation order clearly expressed the search condition and Knights was unambiguously informed of it."[75] As explained below, Mr. Lebron's probationary condition does not specify what level of suspicion is required to invoke the search condition so it cannot be said that he was unambiguously informed of it. And *King* was limited to probationers convicted of violent crimes; Mr. Lebron was not on probation for a violent crime and therefore his reasonable expectation of privacy was greater than King's.[76] The Court therefore conducts a complete Fourth Amendment analysis to determine the reasonableness of the probationary search of Mr. Lebron's home.

---

[73] *King*, 736 F.3d at 806, 810; *see Job*, 871 F.3d at 860 ("[O]ur decision in *King* was limited to individuals on probation for violent felonies.").

[74] *Samson*, 547 U.S. at 850.

[75] *Knights*, 534 U.S. at 119.

[76] *Lara*, 815 F.3d at 610.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 16 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 16 of 21

## 1. Mr. Lebron's Privacy Interest

"The extent to which the search intruded on [Mr. Lebron's] privacy depends on several factors, the most important of which are his status as a probationer, the clarity of the conditions of probation, and the nature of the contents" of the property being searched.[77]

"First, because [Mr. Lebron] is on probation, his reasonable expectation of privacy is lower than someone who has completed probation or who has never been convicted of a crime."[78] "But while the privacy interest of a probationer has been 'significantly diminished,' it is still substantial."[79]

Second, Mr. Lebron's search condition was not clear. As noted above, the condition authorized a warrantless search of Mr. Lebron's residence for drugs and drug paraphernalia but the condition is otherwise ambiguous as to whether any level of suspicion is necessary before initiating as search pursuant to the condition. In *Lara*, the Ninth Circuit held that the search condition was ambiguous because it was unclear whether a search of a cellphone was covered by the search condition's authorization to search "property" or a "container."[80] The *Lara* court distinguished *Knights*, where the condition expressly authorized a search of the

---

[77] *Id.* at 610.

[78] *Id.* at 610.

[79] *Id.* (quoting *Knights*, 534 U.S. at 120).

[80] *Id.* at 611.

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 17 of 21

probationer's residence, and that is what was searched.[81]  While it is true that here the search condition authorized a search of Mr. Lebron's residence, and that is what the officers searched, the Court still finds that ambiguity about the condition remains.[82]  As such, Mr. Lebron was not "unambiguously informed" of the search condition and therefore his reasonable expectation of privacy is greater than the probationer in *Knights* and is more similar to the probationer in *Lara*.

Third, the Court finds that Mr. Lebron's expectation of privacy in his residence was diminished.  Setting aside the ambiguity of whether any suspicion was required before a search, Mr. Lebron was on notice by his probation condition that his residence could be searched.  In contrast, in *Lara*, the probationer was not on notice that his cellphone could be searched and his privacy interest in a cellphone was substantial and greater than an interest in a residence, as "[a] cell phone search 'would typically expose to the government far more than the most exhaustive search of a house[.]'"[83]  The Court therefore finds that Mr. Lebron had a diminished privacy interest in a search of his residence for drugs and drug paraphernalia.

## 2.  The Government's Interest

Probatory searches advance several important government interests:

---

[81] *Id.*

[82] The Court therefore rejects the Report and Recommendation insofar as it concluded that Mr. Lebron's search condition was unambiguous.  Docket 38 at 17.

[83] *Lara*, 815 F.3d at 611-12 (quoting *Riley v. California*, 573 U.S. 373, 396 (2014)).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 18 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 18 of 21

combating recidivism, helping probationers integrate back into the community, apprehending those who violate criminal law, discovering criminal activity, and preventing the destruction of evidence.[84] "[S]ome forms of search by probation officers are not only compatible with rehabilitation, but, with respect to those convicted of certain offenses such as possession and distribution of narcotics, are also essential to the proper functioning of a probationary system."[85] The strength of the government's interest "in a particular case varies depending on the degree to which the government has a specific reason to suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into the community."[86] For example,

> [i]n *Knights*, the officers had substantial evidence showing that while on probation Knights had vandalized and set fire to an electrical facility and an adjoining telecommunications vault, causing an estimated $1.5 million in damages. In *King*, the officers suspected that the defendant was involved in a homicide and knew that he had been previously convicted of the violent crime of willful infliction of corporal injury on a cohabitant. . . . Lara had merely missed a meeting with his probation officer.[87]

Here, the POs knew that Mr. Lebron had a prior drug conviction and a pending state domestic violence charge. They had received anonymous tips identifying the victim in Mr. Lebron's pending domestic violence case, describing

---

[84] *Id.* at 612 (citations omitted); *King*, 736 U.S. at 809.

[85] *Consuelo-Gonzalez,* 521 F.2d at 265.

[86] *Lara*, 815 F.3d at 612.

[87] *Id.* at 612 (third emphasis added).

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 19 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 19 of 21

an argument between the victim and Mr. Lebron and that the victim moved to a hotel, mentioning that Mr. Lebron had drugs and a gun in his home, and noting that Mr. Lebron's third-party custodian was living in a car on Mr. Lebron's property.[88]  Therefore, the officers had "a specific reason to suspect" that Mr. Lebron was "jeopardizing his reintegration into the community."[89]  Similar to *King*, the Court finds that the "the governmental interests at stake here 'are substantial.'"[90]

Balancing Mr. Lebron's diminished expectation of privacy in his residence based on the probation search condition against the Government's need to promote its legitimate and substantial interests, the Court finds that the probation search of Mr. Lebron's residence was reasonable under the Fourth Amendment.[91]

In sum, because the Court finds both that the probation search of the residence complied with the Fourth Amendment and that the inevitable discovery doctrine applies, the Fourth Amendment does not require suppression of the evidence found in Mr. Lebron's residence.

---

[88] Docket 35 at 3.

[89] *Lara*, 815 F.3d at 612.

[90] *King*, 736 F.3d at 809 (quoting *Samson*, 547 U.S. at 853).

[91] *See United States v. Consuelo-Gonzalez*, 521 F.2d 259, 266 (9th Cir. 1975) ("Moreover, a thorough search of a probationer's residence incident to, or following, a probation visit is not dependent upon the establishment of probable cause.  A reasonable belief on the part of the probation officer that such a search is necessary to perform properly his duties is sufficient.").

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 20 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 20 of 21

## CONCLUSION

The Court GRANTS in part Mr. Lebron's Motion to Suppress at Docket 35 as to any evidence obtained during the PED officers' search and arrest of Mr. Lebron at the PED office. The Court otherwise DENIES Mr. Lebron's Motion to Suppress as to evidence obtained from Mr. Lebron's residence by the POs and PEDs, as the search was reasonable pursuant to the Fourth Amendment and suppression is not required pursuant to the inevitable discovery doctrine. The Court further ADOPTS the Magistrate Judge's recommendation to suppress any statements made by Mr. Lebron before he received *Miranda* warnings, although no such statements have been identified.

DATED this 13th day of September, 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cr-00056-SLG-MMS, *United States v. Lebron*
Order re Motion to Suppress
Page 21 of 21

Case 3:23-cr-00056-SLG-MMS   Document 70   Filed 09/13/24   Page 21 of 21